**LAW OFFICES OF PERRY C. WANDER**
Perry C. Wander (SBN: 102523)
9454 Wilshire Boulevard, Penthouse
Beverly Hills, California 90212
Telephone: 310-274-9985
Facsimile: 310-274-9987
Email: pcwlaw@msn.com

Attorney for Plaintiff Sarah Barber

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARAH BARBER,<br><br>            Plaintiff,<br><br>      vs.<br><br><br>PEPPERDINE UNIVERSITY,  a private nonprofit university organized under the laws of the State of California,<br><br><br>            Defendant. | CASE NO.:<br><br><br>**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. **DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §12101-§12213)**<br>2. **FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101)**<br>3. **DISABILITY DISCRIMINATION VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)**<br>4. **RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, (42 U.S.C. § 12203, AND SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)**<br>5. **INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

1

**INTRODUCTION**

1. This is a civil rights action arising from Pepperdine University's ("Defendant" or "Pepperdine) systemic failure to provide equal access to its Malibu campus and programs for Plaintiff, an undergraduate student with SMA Type 3, a progressive mobility disability.

2. Despite knowledge of Plaintiff's disability, Defendant maintained architectural and programmatic barriers, denied reasonable modifications, and imposed policies that excluded or penalized Plaintiff's participation in academics, housing, and university-sponsored programs.

3. Defendant's conduct violates Title III of Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and California's Unruh Civil Rights Act and Disabled Persons Act.

4. Sarah Barber ("Plaintiff" or "Sarah") has been subjected to a hostile, inaccessible environment that has systematically discriminated against her during the past 3 years as an undergraduate student through an unlawful failure to accommodate and retaliatory actions. Pepperdine University failed to provide the necessary accommodations to support her specific needs for her condition. Instead, what followed was a pattern—systemic, pervasive, and willful—of denying a disabled student the equal access that federal law demands. That this occurred at a Christian institution, with a law school on its own campus capable of guiding ADA compliance, renders the conduct inexplicable and inexcusable.

5. Plaintiff is a qualified individual with a disability. Born with Type III Spinal Muscular Atrophy, a rare progressive genetic disease, impacting Plaintiff's mobility, respiratory health, and long-term function. Despite these significant challenges, she graduated from high school with a 4.5 GPA and pursued higher education with the same determination and excellence that had defined her academic career. When Sarah applied to Pepperdine she disclosed the limitations she faces due to her disability, and her belief that those accessibility challenges could be overcome with her resilience and Pepperdine's' cooperation.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

6. It was her lifelong dream to attend Pepperdine, the same university her mother had attended. When her dream of attending Pepperdine materialized and Sarah was accepted, Pepperdine represented to Sarah that it could accommodate her accessibility needs. Sarah's dream instead became a nightmare over the next three years from her freshman through junior years.

7. Plaintiff came to Pepperdine to obtain an education. Instead, she was met with barriers—physical, administrative, and attitudinal—at nearly every turn. While able-bodied students traversed campus in minutes, Plaintiff required upwards of an hour, owing not to the nature of her disability alone, but to the University's failure to provide accessible transportation. The Office of Student Accessibility itself lacked an accessible entrance. One need not belabor the point: an accessibility office that is inaccessible is not merely ironic—it is indicative of a deeper, systemic failure.

8. On the first day of school Pepperdine placed Plaintiff in third-floor housing despite clear notice of her need for accessible accommodations. When she complained to the Resident Advisor, she was told to beg another student on the ground floor to switch. She tried, and was immediately met with strong resistance from students she approached. She became so embarrassed and frustrated that she burst into tears. When her mother saw her daughter in distress, she broke down crying too.

9. Sarah then approached the OSA, but was told there was nothing they could do, and that dorms had already been assigned to students. To make matters worse, the dorm elevators were out of service often (sometimes due to lack of inspections), requiring a teacher to carry her up the stairs to her dorm room, inflicting shame and embarrassment on Sarah.

10. A key incentive for Plaintiff to attend Pepperdine, is that it offers study abroad programs. Pepperdine operates its own campuses in several major global cities such as Florence, Italy and London, United Kingdom. The study abroad programs are so popular that 95% of undergraduates participate in them. When Plaintiff applied for her sophomore year, she was accepted into the program. Sarah was overjoyed that she would be able to join her classmates on this adventure.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

11. Afterwards, without warning, Pepperdine shockingly stated that they could not provide disability access to her at their campus facilities (which they own), forcing Sarah to drop the program. Sarah's heart was broken. Her dream to study abroad, and be treated like all the other students on campus was shattered. Sarah felt defeated, alone and depressed from this discrimination.

12. Pepperdine's Malibu campus is built on steep terrain with dispersed facilities, requiring frequent traversal between elevations. Excessive travel distances between classes over steep grades and limited ADA handicap parking forced Sarah to take a shuttle bus provided by Pepperdine to assist the students getting around campus. Pepperdine has only 3 ADA compliant shuttle buses. These shuttle buses are very crowded, as non-handicapped students can jump on and off at each stop.

13. Only handicapped students must call and make a reservation for a bus, but because there are insufficient shuttle ADA complaint buses, a trip from one end of campus to another for Sarah takes up to an hour instead of minutes for non-handicapped students

14. Parking—essential to Plaintiff's mobility—became yet another instrument of discrimination. Over the past two decades, Pepperdine has expanded its campus and, substantially increased its student population. Yet the number of ADA-accessible parking spaces has not kept pace. To the contrary, Pepperdine has reduced accessibility by converting ADA spaces for use by its maintenance, security, staff, visiting speakers, and construction crews, while tolerating student misuse of disability placards by non-disabled individuals. Plaintiff was forced to park where she could, because she could never find handicapped parking. Sometimes she had no other option but to park in a designated parking spot that was not ADA but not specifically designated for students. For that, Sarah was ticketed and cited, fined thousands of dollars, and had her vehicle booted, ***not once, but twice.*** When Sarah sought relief for the fines from the Office of the Dean, he did not respond. When she turned to OSA, they responded that it was *"it's too late, it's already paid."*

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

15. For a student with SMA Type 3, the absence of reliable, on-demand mobility support renders the campus effectively inaccessible.

16. Perhaps the worst experience was when Sarah was in class and received a text from the Administration demanding that she move her car. Sarah responded that she was legally parked in a handicapped space and had her placard on view. She was told that she still had to move her vehicle. Sarah discovered that Pepperdine needed her handicapped spot for a VIP speaker on campus, who was not handicapped, but was promised her parking spot close to her classroom. Shockingly, there was an empty parking space next to her ADA spot. When she inquired why Pepperdine did not reserve the empty parking space for the speaker, the response was that her ADA spot was promised.

17. Perhaps one of the more humiliating administrative decisions by Pepperdine was to ban Sarah from taking chemistry, under the guise that a tremor may cause spilling of chemicals. This is even more shocking and egregious as Sarah's declared major was chemistry. Pepperdine is required under Federal law to provide equal access to all academic programs (including chemistry labs), and make reasonable accommodations if required. Pepperdine cannot exclude a student based on such a generalized fear. Defendant failed to ensure accessible placements or provide equivalent alternatives, resulting in her exclusion from core educational opportunities required for her major. Sarah advocated for herself and suggested using a teaching assistant to help her during lab, and after lengthy negotiations Pepperdine reluctantly relented, but it was not an interactive process as required under Federal law, this 180 degree change occurred due to the persistence and advocacy of Sarah.

18. The law does not require perfection. It does require compliance. It does not permit universities to ignore their obligations, nor to shift the burden of accessibility onto the very students the law is designed to protect. Defendant's conduct—shocking, outrageous, and, at times, plainly retaliatory—falls well short of what the ADA and Section 504 demand.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

19. Plaintiff brings this action not only to vindicate her rights, but to compel adherence to the law. She seeks $5,000,000 in general damages, $20,000,000 in punitive damages and injunctive relief sufficient to ensure that the disability discrimination that occurred to Sarah does not recur. This lawsuit seeks to remedy Pepperdine University's institutional culture of ADA discrimination.

**PARTIES**

20. Plaintiff, Sarah Barber ("Plaintiff" or "Sarah"), is an individual residing in the County of Los Angeles, City of Malibu, State of California and is an undergraduate junior student currently enrolled at Pepperdine University with SMA Type 3, substantially limiting major life activities including walking, standing, climbing, and endurance, and is thus an individual with a qualifying disability under the Americans with Disabilities Act. (28 U.S.C. § 1331)("ADA")

21. Defendant Pepperdine University is, and at all relevant times was, a private nonprofit university organized under the laws of the State of California, with its principal place of business in Malibu, California. Defendant owns, operates, and/or leases places of public accommodation within the meaning of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. Defendant is also a recipient of federal financial assistance and is therefore subject to the requirements of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

**22. JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, including the Americans with Disabilities Act 42 U.S.C. §12101, et seq. and Section 504 of the Rehabilitation Act of 1973.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant Pepperdine University is located in the Central District, which includes Los Angeles County, California.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**STATEMENT OF FACTS**

25. Plaintiff is, and at all relevant times was, a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. Since birth, Plaintiff has lacked the Survival Motor Neuron 1 gene, resulting in a diagnosis of Spinal Muscular Atrophy Type III. Plaintiff's condition significantly impairs her mobility, limiting her ability to walk, and causes hand tremors that affect her fine motor skills.

26. By the fifth grade, Plaintiff required the use of a walker. By the seventh grade, Plaintiff underwent two significant surgical procedures to correct scoliosis arising from her condition. Plaintiff continues to experience residual back sensitivity. Plaintiff requires ongoing, lifelong medical treatment to manage and mitigate the progression of further physical deterioration associated with her condition.

27. Plaintiff is a student at Pepperdine, a federally funded institution that is legally obligated to provide equal access, reasonable accommodations, and non-discriminatory treatment to students with disabilities. Despite these obligations—and despite operating a law school on campus that could have guided compliance with federal law—Defendant engaged in shocking, systemic, pervasive, and shameful discrimination, as set forth below.

**Choosing Pepperdine**

28. Plaintiff graduated from high school with a 4.5 GPA and had numerous options for continuing her education, including acceptances to institutions ranked higher than Pepperdine. Plaintiff ultimately chose Pepperdine to double-major in Chemistry and English after meeting with representatives of the university in person, during which they repeatedly assured her that they could accommodate her needs, an assurance that other universities with significantly larger campuses indicated might be difficult to provide.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

29. Plaintiff relied on these representations in making her decision, believing she had found a suitable academic and social environment at a smaller, Christian institution where she would be supported and accepted.

30. Plaintiff moved from out-of-state to attend Pepperdine. She was granted accommodations, including assignment to a first-floor dormitory, ability to type all exams in an end-stall, and permission to park in any recognized parking space.

**Freshman Year (2023 – 2024)**

*Housing Assignment*

31. On move-in day in August 2023, Plaintiff arrived on campus excited to begin her college experience. Since on-campus housing is a requirement for all freshmen and sophomores, all students submitted housing applications. Plaintiff had clearly disclosed her physical disability and expressly requested first-floor in her housing application and through the Office of Student Accessibility ("OSA").

32. Notwithstanding this, Defendant placed Plaintiff on the top floor of a dormitory requiring multiple flights of stairs, as there was no elevator in this building. This placement was not only inappropriate but dangerous. Plaintiff informed residential staff, including a resident advisor and residence director, that she could not access her assigned room. She was told that no solution was available, despite her previously granted first-floor housing accommodation.

33. As a result, Plaintiff left campus and stayed in a hotel temporarily. Several days later, Defendant reassigned Plaintiff to a different dormitory in a separate residential area, Seaside Hall, despite generally reserved for sophomores. This reassignment disrupted Plaintiff's freshman integration and support system.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

8

*Chemistry Major*

34. Shortly thereafter, during academic advising, Plaintiff met with her Chemistry advisor to discuss her academic plan. In an outrageous and discriminatory statement, Plaintiff was told directly that, because she has a tremor, she would not be capable of completing a Chemistry degree. Plaintiff brought these concerns to the department chair, who responded by asking whether Plaintiff intended to sue, rather than addressing the issue at hand. Eventually, after repetitive advocation from Plaintiff and her mother, Defendant agreed to assign Plaintiff a teacher-assistant.

*Inaccessible Parking and Citations*

35. Accessible parking spaces were frequently unavailable. Due to these limitations, Plaintiff sought guidance from Defendant's Department of Public Safety ("DPS") regarding where she could park when no accessible spaces were available.

36. DPS informed Plaintiff that, given her disability-related needs, she was permitted to park in any area recognized as a parking space. Plaintiff relied on this instruction and, when no accessible parking was available, parked in faculty-designated parking spaces that were recognized as valid parking locations.

37. Despite this guidance, DPS subsequently issued multiple parking citations to Plaintiff for parking in those areas. DPS did not honor the instruction previously provided to Plaintiff and instead enforced parking restrictions. When Plaintiff made attempts to repeal the citations, DPS was inconsistent with which tickets would be dismissed or enforced.

*Inaccessible Transportation*

38. Plaintiff experienced a complete failure of accessible transportation. Defendant operates shuttle buses for student transportation throughout campus. However, not all shuttle vehicles are accessible to individuals with mobility impairments, and there is no means of identifying when one would arrive. As a result, Plaintiff learned she could not reliably utilize the shuttle system.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

39. This uncertainty rendered the shuttle system effectively unusable for Plaintiff, especially for the purpose of attending classes.

40. On one occasion when no accessible parking was available, Plaintiff contacted DPS to seek guidance on how to access her classes given that she had no means of reaching them. DPS offered to transport Plaintiff to class. DPS arrived approximately three hours late, causing Plaintiff to miss all scheduled classes that day, including a class where grades were attendance dependent. This incident exemplifies Defendant's failure to provide reliable and accessible services. By the spring semester, Plaintiff's grades declined as a direct result of missed classes due to her inability to access classrooms.

*Inaccessible Cafeteria*

41. Plaintiff avoided eating at the campus cafeteria due to accessibility barriers. The only available accessible route required Plaintiff to use an employee-only elevator located within the kitchen and then travel through the kitchen area, which had limited space for maneuvering with a walker. The primary route used by other students was a staircase, which was not accessible to Plaintiff. Although a ramp was present, it was excessively steep and not reasonably navigable for Plaintiff to use independently and safely with her mobility device. As a result, Plaintiff was effectively deterred from using the cafeteria on a regular basis.

*Inaccessible Campus Elevators*

42. The only elevators in Defendant's building that provide access to Plaintiff in her academic building are the science elevator and the library elevator. The science elevator is frequently out of order or shut down, and neither Defendant's maintenance team nor DPS would notify Plaintiff of such issues. On occasion, the Chemistry department dean would personally inform Plaintiff if he noticed that the elevator was down, by his own initiative. When the science elevator was not operational, Plaintiff's only alternative for accessing other floors was the library elevator.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

43. However, the library elevator required Plaintiff's student ID or the librarian's key to operate, and these methods often failed to work. Furthermore, the library elevator was locked during the library's closed hours. In instances when both elevators were out of service, Plaintiff had no safe or viable way to exit the building or reach the fourth floor, where access to the parking lot is located.

*Study Abroad Program*

44. In the spring of her freshman year, Plaintiff applied for a semester abroad program in London for the spring of her sophomore year. Throughout the application process, Plaintiff repeatedly disclosed her disability and use of a walker. Although initially accepted, Defendant later required Plaintiff to attend a meeting where all proposed reasonable accommodations—many suggested by Plaintiff's mother—were rejected outright.

45. Defendant then demanded that Plaintiff sign a waiver acknowledging that, in the event of a fire, the university would not assist her evacuation due to a frequently broken elevator and her assignment to a basement-level room. Defendant further informed Plaintiff that she would be excluded from the week-long trip to Jordan that all other participants in the London program attend. Although Defendant covers the cost of travel to Jordan for other students, they refused to cover the cost of Plaintiff's return travel to the United States following her exclusion.

46. Defendant instead stated that Plaintiff would be left alone in London during that period, without supervision or support. This inexcusable and willful conduct forced Plaintiff to abandon her study abroad opportunity, effectively excluding her from participation solely because of her disability.

**Sophomore Year (2024–2025)**

47. During Plaintiff's sophomore year, Defendant's discriminatory and retaliatory conduct continued.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

*Booted Vehicle*

48. Plaintiff's vehicle was booted outside her dorm after she parked in a Resident Advisor-designated spot, despite her disability and need for proximate parking. In a second incident, Plaintiff's vehicle was booted after parking in a faculty-designated spot, for the same reason. Plaintiff was left stranded waiting for the boot to be removed, further evidencing Defendant's pattern of punitive and retaliatory treatment. These were two of the multiple incidents in which Defendant targeted Plaintiff's vehicle rather than accommodating her mobility limitations.

*Inaccessible Elevators*

49. During sophomore year, Plaintiff was trapped inside the library elevator. Despite her repeated attempts to obtain assistance, DPS failed to respond. Plaintiff was ultimately assisted by her Chemistry professor, who heard her distress. The professor carried Plaintiff up four flights of stairs, while Plaintiff's classmate followed with the walker. This incident reflects a dangerous and systemic failure to ensure accessible and safe facilities.

50. In another incident, the only elevator providing access to Plaintiff's Physics class broke. Defendant failed to notify Plaintiff or provide an alternative. As a result, Plaintiff was carried up multiple flights of stairs by her professor and a peer—an embarrassing, unsafe, and wholly avoidable situation that underscores Defendant's willful failure to maintain accessible infrastructure.

*Inaccessible Classrooms*

51. Plaintiff was enrolled in a required General Education course, History of Modern China, which was located down a flight of stairs with no accessible alternative. While a stairlift was attached, it was nonfunctional. Plaintiff was forced to navigate these stairs each class session without prior notice or accommodation, placing her at risk of injury and denying equal access to education. Furthermore, any need to use the restroom during class necessitated her navigating the same stairs again, both to and from the restroom.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**



52. Throughout the academic year, Plaintiff was forced to advocate repeatedly for basic accommodations as a disabled STEM student, including requesting a lab aide and other necessary support. Additionally, Plaintiff's Organic Chemistry course required students to use lab benches to handle chemicals, which come equipped with a ventilation hood. Plaintiff was assigned an accessible lab bench, the equipment was outdated and did not function properly, creating safety concerns.

53. Due to these issues, Plaintiff's professor advised her to use a non-accessible lab bench, as those stations had been recently renovated and were safer to operate. Because the non-accessible bench did not accommodate Plaintiff's mobility limitations, she experienced difficulty performing required tasks and was often required to rely on others for assistance. Rather than proactively ensuring compliance, Defendant placed the burden on Plaintiff, reflecting a pervasive and intentional disregard for disability rights. Due to Pepperdine's failure to meaningfully engage in an interactive process, Plaintiff ended the semester with a C+, despite scoring 96% on the final exam.

*Inaccessible Office of Student Accessibility*

54. Plaintiff also encountered accessibility barriers within the Office of Student Accessibility itself, as it lacked an automatic door-opening mechanism, making entry difficult and, at times, impossible. Despite Plaintiff's repeated complaints regarding the difficulty in opening the heavy doors, Defendant delayed addressing the issue and initially claimed that "Pepperdine would not fund it," demonstrating a tone deaf and ignorant disregard for accessibility obligations.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

*Ignored Accommodations at Office of Student Accessibility*

55. As part of Plaintiff's approved academic accommodations, she was frequently assigned to take exams in a designated testing room at the OSA, where she was allowed to type her exams, as opposed to other students who were required to handwrite them. The testing room is divided into individual stalls, and Plaintiff's accommodation specifically required that she be assigned to an end stall to ensure sufficient space for her walker.

56. Despite the clear necessity of this accommodation, Plaintiff's request for an end-stall assignment was repeatedly disregarded by OSA. Plaintiff raised this issue on multiple occasions, yet the response she received consistently stated that she was required to sit in whatever stall was assigned to her, regardless of her specific accessibility needs.

**Junior Year (2025–Present)**

57. Defendant's conduct has continued into Plaintiff's junior year and has become increasingly retaliatory.

*Inaccessible Parking*

58. Plaintiff sought administrative intervention by emailing the Dean regarding ongoing and worsening parking restrictions. Although Plaintiff had previously been permitted to park in multiple accessible locations, those options were progressively eliminated. The Dean failed to respond directly and instead redirected Plaintiff back to OSA, which did not resolve the issue. This reflects deliberate indifference and systemic failure at the administrative level.

59. Plaintiff has since been repeatedly ticketed for parking in maintenance-designated spaces near the campus center, locations she had previously been authorized to use. These actions have significantly interfered with her ability to attend classes and access campus facilities.

60. Campus events routinely occupy the primary parking areas Plaintiff relies upon for accessibility. The accessible parking spots are frequently allocated to able-bodied guests without advance notice to Plaintiff, leaving her without viable parking options. This practice disproportionately impacts disabled students and constitutes disparate treatment.

61. In one particularly egregious incident, a DPS officer followed Plaintiff with the apparent intent to issue a citation while she was attempting to park. In another instance, an events coordinator repeatedly pressured Plaintiff via electronic communication to move her vehicle from a valid accessible parking space to accommodate a guest speaker, despite Plaintiff's lawful use of the space with an ADA placard. These actions constitute intentional and retaliatory harassment.

62. In April, Plaintiff personally observed a DPS vehicle parked in an ADA-designated space without displaying a placard and a separate vehicle parked illegally near a red curb and fire hydrant without citation. These incidents demonstrate selective enforcement and further support Plaintiff's claim of discriminatory and retaliatory treatment.



*Inaccessible Housing*

63. In the fall of her junior year, Plaintiff was assigned to a dormitory in the Drescher building. The associated parking structure is multi-level, requiring Plaintiff to use an elevator to access her vehicle. While the dorm had an elevator, getting it to work was another matter.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

64. The elevator was frequently nonfunctional, which required Plaintiff to travel the full length of the parking structure, through the ramps designed for vehicles, in order to enter or exit, as stairs were not accessible to her.

65. By end of the fall semester, Plaintiff's mother relocated from Utah to California for the purpose of assisting Plaintiff with daily accessibility challenges.

66. Plaintiff's mother purchased a residence near campus so that Plaintiff could live off campus in an environment without the accessibility barriers. In doing so, Plaintiff's mother left behind her community in order to support Plaintiff's basic access needs.

*Academic Impact*

67. As the discrimination, failure to accommodate, and retaliation got worse, Plaintiff's grades had dropped from a 3.87 GPA in her freshman year to a 3.42 GPA in her junior year. This is a direct result of constantly missing class due to Defendant's actions.

68. When Plaintiff raised accessibility-related concerns with her professors, responses were inconsistent; some professors provided flexibility, while others did not. In one instance, Plaintiff recognized that she was unable to keep pace in her Quantitative Chemistry course due to ongoing accessibility barriers that affected her ability to attend and participate in class.

69. Plaintiff sought guidance from the professor regarding whether she should withdraw from the course. The professor advised Plaintiff to remain enrolled and represented that accommodations could be made to support her completion of the course. Despite this, Plaintiff ultimately received a grade of D-. Plaintiff was penalized for lateness/attendance attributable to disability-related barriers.

70. Plaintiff intends to pursue a legal education. However, she is concerned that the decline in her academic performance, resulting from the accessibility barriers, may adversely affect her ability to gain admission to law school.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**Systemic Failures**

71. The foregoing incidents are not isolated. Rather, they reflect a systemic, pervasive, and willful pattern of discrimination and failure to accommodate, including but not limited to:

    a.   Failing to provide adequate ADA-compliant parking on campus;

    b.   Denying Plaintiff equal access to academic programs due to accessibility barriers;

    c.   Denying Plaintiff, the opportunity to participate in a semester abroad program due to accessibility barriers;

    d.   Failing to provide accessible, ground-floor or otherwise suitable student housing;

    e.   Failing to provide adequate wheelchair-accessible shuttle transportation on campus;

    f.   Failing to provide working, accessible elevators;

    g.   Failure to implement accommodations that had already been approved and promised;

    h.   Maintaining offices and facilities without ADA-compliant accessible entry;

    i.   Defendant substantially increased the intensity of use of the property, with construction, substantially increasing the student population, without corresponding upgrades to accessible parking and paths of travel, in violation of ADA Title III and California accessibility laws.

72. Upon information and belief, over the past two decades Defendant has substantially increased its student population—effectively doubling enrollment—while continuing to expand and construct new buildings throughout campus. Despite this significant growth, Defendant has failed to correspondingly increase the number of ADA-compliant parking spaces originally established when Los Angeles County permitted the campus facilities. This disparity is shocking and demonstrates a systemic and pervasive failure to comply with federal accessibility requirements.

73. Compounding this issue, Defendant has engaged in practices that further erode the already insufficient supply of accessible parking. Specifically, Defendant has converted existing ADA-designated spaces for use by maintenance personnel, security, non-ADA visitors, and staff, thereby reducing availability for disabled students.

74. At the same time, Defendant has knowingly permitted or failed to prevent misuse of ADA placards, including allowing non-disabled students to utilize placards issued to family members.

75. The combined effect of these policies and practices has created a severe shortage of accessible parking, disproportionately impacting Plaintiff and other similarly situated disabled students. Despite repeated notice, Defendant has willfully refused to acknowledge or remedy this deficiency. This conduct is not only tone deaf and inexcusable, but also reflects intentional and disparate treatment in violation of federal law.

76. Defendant's conduct was intentional, discriminatory, and retaliatory. It reflects not only negligence but a broader institutional failure—despite clear legal obligations—to comply with federal disability law.

77. The totality of Defendant's actions is shocking, outrageous, and inexcusable. Plaintiff has suffered harm, humiliation, emotional distress, and denial of equal educational opportunities as a direct result of Defendant's unlawful conduct.

**Injunctive and Declaratory Relief**

78. Absent judicial intervention, Defendant's unlawful practices are likely to continue. Plaintiff therefore, seeks injunctive and declaratory relief to compel Defendant to comply with the ADA and Section 504, eliminate discriminatory practices, implement systemic reforms, and ensure equal access for all students with disabilities.

## FIRST CAUSE OF ACTION

**For Disability Discrimination under the Americans with Disabilities Act
(42 U.S.C. §12101, et seq.)**

**(Disparate Treatment)**

79. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

80. Defendant Pepperdine is a "covered entity" within the meaning of the Americans with Disabilities Act and a recipient of federal financial assistance subject to Section 504 of the Rehabilitation Act of 1973 and thus is subject to the ADA.

81. Plaintiff is an individual with a mobility disability within the meaning of the Rehabilitation Act and the Americans with Disabilities Act. A disability under the ADA is a physical impairment that substantially limits one or more major life activities, or a substantial limitation.

82. Plaintiff is otherwise qualified to participate in Defendant's educational programs, services, and activities, with or without reasonable accommodation.

83. Defendant Pepperdine University is a private university that receives federal financial assistance and is therefore subject to Section 504, and is also a place of public accommodation subject to Title III of the ADA.

84. Defendant had actual direct knowledge of Plaintiff's disability in her application for Admittance to the university, and through various complaints to the Office of Student Accessibility (OSA) at Pepperdine University, whose stated purpose is to *"ensure ADA compliance and provide reasonable accommodations for students with disabilities to ensure equal access to educational programs."* Services include academic adjustments, housing, and on-campus mobility assistance.

85. Defendant Pepperdine intentionally treated Plaintiff differently than similarly situated non-disabled students.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

86. Such disparate treatment included, but is not limited to, denying Plaintiff equal access to educational benefits, imposing adverse academic consequences, and/or subjecting Plaintiff to different standards or treatment because of Plaintiff's disability.

87. Plaintiff was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in Defendant's programs and activities, such as a semester abroad in London.

88. Defendant Pepperdine's discriminatory conduct was solely by reason of Plaintiff's disability (Section 504) and/or because of Plaintiff's disability (ADA).

89. The foregoing incidents are not isolated. Rather, they reflect a systemic, pervasive, and willful pattern of discrimination and failure to accommodate, including but not limited to:

    a.   Failing to provide adequate ADA-compliant parking on campus;

    b.   Denying Plaintiff equal access to academic programs due to accessibility barriers;

    c.   Denying Plaintiff, the opportunity to participate in a semester abroad program due to accessibility barriers;

    d.   Failing to provide accessible, ground-floor or otherwise suitable student housing;

    e.   Failing to provide adequate wheelchair-accessible shuttle transportation on campus;

    f.   Maintaining offices and facilities without ADA-compliant accessible entry;

    g.   Defendant substantially increased the intensity of use of the property, with construction, substantially increasing the student population, without corresponding upgrades to accessible parking and paths of travel, in violation of ADA Title III and California accessibility laws.

90. As a direct and proximate result of Defendant's acts and omissions, including its failure to provide reasonable accommodations and ensure effective access, Plaintiff was denied meaningful and equal access to Defendant's educational programs, services, housing, transportation, and facilities, in violation of applicable federal disability rights laws.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

91. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain special damages, including but not limited to educational injury; loss of academic progress, credits, and standing; loss of participation in extracurricular and enrichment opportunities; and other consequential economic and non-economic losses, in an amount to be proven at trial.

92. As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continue to suffer sever and permanent emotional and mental distress and anguish humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiffs, but who seeks general and compensatory damages in an amount to be determined at the time of trial, but not less than five million dollars ($5,000,000).

93. Defendant's conduct was intentional, willful, and/or carried out with deliberate indifference to Plaintiff's federally protected rights. The aforementioned acts of Pepperdine, the Office of the Dean, Campus police and OSA, and each of them, were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial, but not less than twenty million dollars ($20,000,000).

94. Plaintiff is entitled to recover reasonable attorneys' fees, costs, and litigation expenses pursuant to the fee-shifting provisions of the Americans with Disabilities Act, 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b). These statutes expressly authorize prevailing parties in actions to enforce disability rights to obtain such relief, in order to ensure effective access to the courts and to incentivize the vindication of important federal civil rights. As a prevailing party, Plaintiff seeks an award of all reasonable attorneys' fees and costs incurred in the prosecution of this action.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

## SECOND CAUSE OF ACTION

**For Failure to Accommodate in Violation of the Americans with Disabilities Act**

**(42 U.S.C. § 12101, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794)**

95. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act and the ADA. Plaintiff has a mobility impairment that substantially limits one or more major life activities, including walking, standing, and accessing campus facilities.

97. Plaintiff is otherwise qualified to participate in Defendant's educational programs, services, housing, transportation, and activities, with or without reasonable accommodation.

98. Defendant Pepperdine University is a private university that receives federal financial assistance and is therefore subject to Section 504, and is also a place of public accommodation subject to Title III of the ADA.

99. Defendant had actual knowledge of Plaintiff's disability and her need for reasonable accommodations.

100. Plaintiff requested reasonable accommodations necessary to ensure equal access to Defendant's programs, services, and facilities.

101. Defendant failed to provide reasonable accommodations and failed to ensure accessible facilities and services, including but not limited to:

   a. Failing to provide adequate ADA-compliant parking on campus;

   b. Denying Plaintiff equal access to academic programs due to accessibility barriers;

   c. Denying Plaintiff, the opportunity to participate in a semester abroad program due to accessibility barriers;

   d. Failing to provide accessible, ground-floor or otherwise suitable student housing;

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

22

e.  Failing to provide adequate wheelchair-accessible shuttle transportation on campus;

f.  Maintaining offices and facilities without ADA-compliant accessible entry;

g.  Defendant substantially increased the intensity of use of the property, with construction, substantially increasing the student population, without corresponding upgrades to accessible parking and paths of travel, in violation of ADA Title III and California accessibility law.

102. Defendant failed to make reasonable modifications in policies, practices, and procedures necessary to avoid discrimination on the basis of disability.

103. As a direct and proximate result of Defendant's acts and omissions, including its failure to provide reasonable accommodations and ensure effective access, Plaintiff was denied meaningful and equal access to Defendant's educational programs, services, housing, transportation, and facilities, in violation of applicable federal disability rights laws.

104. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain special damages, including but not limited to educational injury; loss of academic progress, credits, and standing; loss of participation in extracurricular and enrichment opportunities; and other consequential economic and non-economic losses, in an amount to be proven at trial.

105. As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continue to suffer sever and permanent emotional and mental distress and anguish humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiffs, but who seeks general and compensatory damages in an amount to be determined at the time of trial, but not less than five million dollars ($5,000,000).

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

106. Defendant's conduct was intentional, willful, and/or carried out with deliberate indifference to Plaintiff's federally protected rights. The aforementioned acts of Pepperdine, the Office of the Dean, Campus police and OSA, and each of them, were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial, but not less than twenty million dollars ($20,000,000).

107. Plaintiff is entitled to recover reasonable attorneys' fees, costs, and litigation expenses pursuant to the fee-shifting provisions of the Americans with Disabilities Act, 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b). These statutes expressly authorize prevailing parties in actions to enforce disability rights to obtain such relief, in order to ensure effective access to the courts and to incentivize the vindication of important federal civil rights. As a prevailing party, Plaintiff seeks an award of all reasonable attorneys' fees and costs incurred in the prosecution of this action.

**THIRD CAUSE OF ACTION**

**For Disability Discrimination under Section 504 of the Rehabilitation Act of 1973**

**(Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794)**

108. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

109. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act.

110. Plaintiff has a mobility impairment that substantially limits one or more major life activities, including walking, standing, and accessing campus facilities.

111. Plaintiff is otherwise qualified to participate in and receive the benefit of Defendant's educational programs, services, activities, and housing, with or without reasonable accommodation.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

112.  Defendant Pepperdine University is a private university that receives federal financial assistance and is therefore subject to Section 504.

113. Defendant Pepperdine had actual knowledge of Plaintiff's disability and her need for reasonable accommodations.

114. Despite such knowledge, Defendant Pepperdine failed to provide reasonable accommodations and failed to ensure that its programs, services, and facilities were accessible to Plaintiff, including but not limited to:

    a.   Failing to provide adequate ADA-compliant parking on campus;

    b.   Denying Plaintiff equal access to academic programs due to accessibility barriers;

    c.   Denying Plaintiff, the opportunity to participate in a semester abroad program due to accessibility barriers;

    d.   Failing to provide accessible, ground-floor or otherwise suitable student housing;

    e.   Failing to provide adequate wheelchair-accessible shuttle transportation on campus;

    f.   Maintaining offices and facilities without ADA-compliant accessible entry;

    g.   Defendant substantially increased the intensity of use of the property, with construction, substantially increasing the student population, without corresponding upgrades to accessible parking and paths of travel, in violation of ADA Title III and California accessibility laws.

115. Defendant Pepperdine substantially increased the intensity of use of the property, with construction, substantially increasing the student population, without corresponding upgrades to accessible parking and paths of travel, in violation of ADA Title III and California accessibility laws.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

116. As a result of Defendant Pepperdine's actions and omissions, Plaintiff was excluded from participation in, denied the benefits of, and otherwise subjected to discrimination in Defendant's programs, services, and activities.

117. Such exclusion, denial of benefits, and discrimination were solely by reason of Plaintiff's disability.

118. Defendant Pepperdine failed to make reasonable modifications in policies, practices, and procedures necessary to provide Plaintiff with meaningful access to its programs and activities.

119. As a direct and proximate result of Defendant's acts and omissions, including its failure to provide reasonable accommodations and ensure effective access, Plaintiff was denied meaningful and equal access to Defendant's educational programs, services, housing, transportation, and facilities, in violation of applicable federal disability rights laws.

120. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain special damages, including but not limited to educational injury; loss of academic progress, credits, and standing; loss of participation in extracurricular and enrichment opportunities; and other consequential economic and non-economic losses, in an amount to be proven at trial.

121. As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continue to suffer sever and permanent emotional and mental distress and anguish humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiffs, but who seeks general and compensatory damages in an amount to be determined at the time of trial, but not less than five million dollars ($5,000,000).

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

122. Defendant's conduct was intentional, willful, and/or carried out with deliberate indifference to Plaintiff's federally protected rights. The aforementioned acts of Pepperdine, the Office of the Dean, Campus police and OSA, and each of them, were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial, but not less than twenty million dollars ($20,000,000).

123. Plaintiff is entitled to recover reasonable attorneys' fees, costs, and litigation expenses pursuant to the fee-shifting provisions of the Americans with Disabilities Act, 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b). These statutes expressly authorize prevailing parties in actions to enforce disability rights to obtain such relief, in order to ensure effective access to the courts and to incentivize the vindication of important federal civil rights. As a prevailing party, Plaintiff seeks an award of all reasonable attorneys' fees and costs incurred in the prosecution of this action.

## FOURTH CAUSE OF ACTION

### For Retaliation under the Americans with Disabilities Act

### (42 U.S.C. § 12203, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794)

124. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Plaintiff engaged in protected activity under federal disability discrimination laws, including but not limited to requesting reasonable accommodations for her mobility disability, complaining about inaccessible facilities and services, and opposing Defendant's discriminatory conduct.

126. Defendant Pepperdine University is a private university that receives federal financial assistance and is subject to the Rehabilitation Act and the ADA.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

127. Defendant, through its agents, including administrative personnel, campus police, and the Office of Accessibility, had knowledge of Plaintiff's protected activity.

128. After learning of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including but not limited to:

129. Defendant Pepperdine's campus police issuing Plaintiff thousands of dollars in parking citations when she was forced to park in non-designated spaces due to the lack of adequate accessible parking;

    a. Booting Plaintiff's vehicle on at least two occasions, further restricting her mobility and access to campus;

    b. Denying or interfering with Plaintiff's access to academic programs and campus services;

    c. Subjecting Plaintiff to retaliatory actions by the Dean, campus police, and the Office of Accessibility.

130. Defendant Pepperdine's actions were taken under circumstances in which Plaintiff was compelled to park in non-designated spaces due to Defendant's failure to provide adequate accessible parking and accommodations.

131. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, as evidenced by temporal proximity, a pattern of escalating enforcement and punishment, retaliatory animus, and pretextual justifications for Defendant's conduct.

132. Defendant's conduct would dissuade a reasonable person with a disability from requesting accommodations or opposing unlawful discrimination.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

133. As a direct and proximate result of Defendant's acts and omissions, including its failure to provide reasonable accommodations and ensure effective access, Plaintiff was denied meaningful and equal access to Defendant's educational programs, services, housing, transportation, and facilities, in violation of applicable federal disability rights laws.

134. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain special damages, including but not limited to educational injury; loss of academic progress, credits, and standing; loss of participation in extracurricular and enrichment opportunities; and other consequential economic and non-economic losses, in an amount to be proven at trial.

135. As a further direct and legal result of the acts and conduct of Defendants, as aforesaid, Plaintiff has been caused, and did suffer, and continue to suffer sever and permanent emotional and mental distress and anguish humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiffs, but who seeks general and compensatory damages in an amount to be determined at the time of trial, but not less than five million dollars ($5,000,000).

136. Defendant's conduct was intentional, willful, and/or carried out with deliberate indifference to Plaintiff's federally protected rights. The aforementioned acts of Pepperdine, the Office of the Dean, Campus police and OSA, and each of them, were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial, but not less than twenty million dollars ($20,000,000).

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

137. Plaintiff is entitled to recover reasonable attorneys' fees, costs, and litigation expenses pursuant to the fee-shifting provisions of the Americans with Disabilities Act, 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b). These statutes expressly authorize prevailing parties in actions to enforce disability rights to obtain such relief, in order to ensure effective access to the courts and to incentivize the vindication of important federal civil rights. As a prevailing party, Plaintiff seeks an award of all reasonable attorneys' fees and costs incurred in the prosecution of this action.

## FIFTH CAUSE OF ACTION

**For Injunctive Relief under the Americans with Disabilities Act**

**(42 U.S.C. § 12182,**

**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794)**

138. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

139. Plaintiff is an individual with a disability within the meaning of the ADA and the Rehabilitation Act.

140. Defendant Pepperdine University is a private university subject to Title III of the ADA and is a recipient of federal financial assistance subject to Section 504 of the Rehabilitation Act.

141. Under Title III of the ADA, Defendant is required to provide individuals with disabilities full and equal enjoyment of its goods, services, facilities, privileges, advantages, and accommodations.

142. Under Section 504, Defendant is prohibited from excluding, denying benefits to, or otherwise discriminating against qualified individuals with disabilities under any program or activity receiving federal financial assistance.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

143. Defendant has engaged in, and continues to engage in, acts and omissions that deny Plaintiff and other similarly situated individuals with disabilities equal access to Defendant's programs, services, facilities, housing, transportation, and educational opportunities.

144. Defendant has failed to make reasonable modifications in policies, practices, and procedures where necessary to afford such access, and has failed to provide accessible facilities and services as required by federal law.

145. Plaintiff faces a real and immediate threat of continued and repeated injury due to Defendant's ongoing failure to provide accessible facilities, academic access, and reasonable accommodations.

146. Defendant's violations are ongoing and are not isolated incidents, but rather constitute a systemic, pervasive, and willful pattern and practice of discrimination and failure to accommodate individuals with disabilities.

147. Legal remedies alone are inadequate to remedy the ongoing harm suffered by Plaintiff. Absent injunctive relief, Plaintiff will continue to suffer irreparable injury.

148. Plaintiff is entitled to preliminary and permanent injunctive relief to remedy Defendant's unlawful conduct and to ensure compliance with federal disability laws.

149. Defendant has engaged in, and continues to engage in, acts and omissions that deny Plaintiff and other similarly situated individuals with disabilities equal access to Defendant's programs, services, facilities, housing, transportation, and educational opportunities.

150. Plaintiff faces a real and immediate threat of continued and repeated injury due to Defendant's ongoing failure to provide accessible facilities, academic access, and reasonable accommodations.

151. Defendant's ongoing violations are not isolated. Rather, they reflect a systemic, pervasive, and willful pattern of discrimination and failure to accommodate.

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

152. Legal remedies alone are inadequate to remedy the ongoing harm, and Plaintiff is entitled to injunctive and relief to prevent further violations, as follows;

**Preliminary and Permanent Injunctive Relief requiring Pepperdine to:**

a.  Cease and desist from discriminatory and retaliatory practices prohibited by federal law;

b.  Provide an adequate number of ADA-compliant parking spaces;

c.  Refrain from issuing citations or immobilizing vehicles of students with disabilities under circumstances where reasonable accommodations have not been provided;

d.  Install and maintain ADA-compliant accessible doors and entryways across campus;

e.  Provide accessible shuttle transportation that is readily available without unnecessary barriers such as advance reservation requirements;

f.  Provide accessible student housing, including ground-floor or otherwise appropriate accommodations for students with mobility disabilities;

g.  Ensure equal access to academic courses, through appropriate accommodations and removal of accessibility barriers;

h.  Ensure equal access to all educational programs, including summer and semester abroad;

i.  Implement policies, training, and oversight to ensure compliance with federal disability laws;

153. Unless enjoined by this Court, Pepperdine University will continue to engage in the unlawful discriminatory conduct in violation of Federal law described herein.

**WHEREFORE, Plaintiff respectfully requests that this Court:**

1.  Issue a declaration that Defendant's acts and omissions violate the ADA and Section 504;

2.  Issue preliminary and permanent injunctive relief requiring Defendant to:

a.  Cease and desist from discriminatory and retaliatory practices prohibited by federal law;

b.  Provide an adequate number of ADA-compliant parking spaces;

c.  Refrain from issuing citations or immobilizing vehicles of students with disabilities under circumstances where reasonable accommodations have not been provided;

d.  Install and maintain ADA-compliant accessible doors and entryways across campus;

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

e.  Provide accessible shuttle transportation that is readily available without unnecessary barriers such as advance reservation requirements;

f.  Provide accessible student housing, including ground-floor or otherwise appropriate accommodations for students with mobility disabilities;

g.  Ensure equal access to academic courses, through appropriate accommodations and removal of accessibility barriers;

h.  Ensure equal access to all educational programs, including summer and semester abroad;

i.  Implement policies, training, and oversight to ensure compliance with federal disability laws;

3.  For general and compensatory damages in an amount to be determined at the time of trial, but not less than five million dollars ($5,000,000).

4.  Special damages, according to proof at trial;

5.  Rescission of unlawful fines and penalties, according to proof at trial;

6.  Policy changes to prevent further retaliation and discrimination;

7.  Plaintiff is entitled to recover reasonable attorneys' fees, costs, and litigation expenses pursuant to the fee-shifting provisions of the Americans with Disabilities Act, 42 U.S.C. § 12205, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b).

8.  For an award of punitive and exemplary damages in an amount to be determined at the time of trial, but not less than twenty million dollars ($20,000,000).

9.  For costs of suit;

10. For such other and further relief as the Court deems just and proper

Dated: April 17, 2026                            LAW OFFICES OF PERRY C. WANDER
                                                 By: /s/Perry C. Wander
                                                 Perry C. Wander, Esq.
                                                 Attorney for Plaintiff Sarah Barber

**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**